IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**EARL ROSS, et al.**                                     **PLAINTIFFS**

**V.**                                **CAUSE NO. 5:17-cv-46-DCB-MTP**

**QUALITY HOMES OF MCCOMB, INC., et al.**                 **DEFENDANTS**

## OPINION AND ORDER

This cause is before the Court on a Motion to Dismiss or, Alternatively, Compel Arbitration **[Doc. No. 14]** filed by Defendant Quality Homes of McComb, Inc. Having considered the motion, the Plaintiffs' response in opposition, and applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

### I.   BACKGROUND

Buyers of a manufactured home sued the home's manufacturer, installer, transporter, financier, and retail-seller after inspecting the home and declaring it "uninhabitable." The buyers allege the defendants misrepresented the nature and quality of the home, breached fiduciary duties, slandered them with racial slurs, and violated assorted federal and state consumer protection and unfair trade practices laws. The motion before the Court centers on an arbitration provision in an agreement between the manufacturer, the retail-seller, and the buyers.

Plaintiffs Earl and Maxcine Ross (the "Rosses") bought a manufactured home made by Defendant Platinum Homes, LLC ("Platinum") from Quality Homes of McComb, Inc. ("Quality"), a McComb-based retail seller [Doc. No. 1, ¶VI]. Defendant U.S. Bank, N.A. ("U.S. Bank") financed the purchase [Doc. No. 1, ¶VI].

As a part of the purchase, the Rosses signed a "Platinum Homes, LLC. Limited Warranty" containing a provision requiring the parties to mediate or arbitrate:

> [A]ny controversy, claim, or dispute between or among the Manufacturer, homeowner, independent retailer finance company or any other person or entity arising from or relating to the Manufactured home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing . . . including any claim relating to the validity of this arbitration provision.

[Doc. No. 14-1, p. 2].

In conspicuous fashion, the provision notifies the parties that by executing the Limited Warranty they "**ARE KNOWINGLY GIVING UP AND WAIVING CERTAIN RIGHT** [*sic*] **TO LITIGATE DISPUTES IN COURT, INCLUDING WAIVING OF A TRIAL BY JURY**" [Doc. No. 14-1, p. 2]. The provision also incorporates "applicable rules" of the American Arbitration Association ("AAA") [Doc. No. 14-1, p. 1].

About two weeks after purchase, transportation company Miss-Lou Mobile Home Movers, LLC ("Miss-Lou") delivered the home to Quality's lot [Doc. No. 1, ¶VIII]. The Rosses inspected the home and found it deficient in several respects: it contained "a gap

in the celling where the roof did not come together," and "sheetrock [that] had fallen from the wall in the living room" [Doc. No. 1, ¶IX]. The Rosses also detected an unpleasant chemical odor [Doc. No. 1, ¶VIII].

Hoping to convince Quality to fix the issues, the Rosses visited Quality several times [Doc. No. 1, ¶¶XI, XII]. On the third visit, the Rosses overheard a phone conversation during which Defendant Joey Harbin, a Platinum manager, said, "I am not coming down there to change out nothing for those niggers" [Doc. No. 1, ¶XII]. Ultimately, Quality refused the Rosses' request to exchange their manufactured home for another [Doc. No. 1, ¶XIII] and U.S. Bank refused their request to rescind the financing contract [Doc. No. 1, ¶XIV].

Two-and-a-half years after inspecting the home, the Rosses sued Quality, Miss Lou, Platinum, Harbin, and U.S. Bank alleging (1) breach of fiduciary duty; (2) breach of contract; (3) breach of the implied covenants of good faith and fair dealing; (4) fraudulent misrepresentations; (5) "unconscionability"; (6) statutory violations and unfair trade practices; and (7) slander [Doc. No. 1, Counts I–X].

In response, Quality, Platinum, Harbin, and U.S. Bank moved to dismiss the Rosses' suit for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). Quality moves, in the alternative, to compel arbitration [Doc. No. 14]. Although

3

Platinum and Harbin appear to support mediation or arbitration under the terms of the Limited Warranty [Doc. No. 29], U.S. Bank takes no position on the issue [Doc. No. 13].

## II.  DISCUSSION

Arbitration disputes present three questions: (1) which party should prevail on the merits; (2) who decides which party should prevail on the merits — the court or an arbitrator; and (3) who decides arbitrability, i.e., whether the dispute is subject to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).

The motion before the Court involves the third question. Although no party raises the issue, the Limited Warranty contains a delegation provision requiring the arbitrator — rather than the Court — to determine the scope of the arbitration provision. See Douglas v. Regions Bank, 757 F.3d 460, 462 (5th Cir. 2014). The Fifth Circuit has directed district courts to compel arbitration "in almost all cases" in which the arbitration provision at-issue contains a delegation clause. Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 202 (5th Cir. 2016).

The delegation clause analysis consists of two steps. Reyna, 839 F.3d at 378. First, the Court examines state-law contract-formation principles to determine whether the Limited Warranty contains a valid agreement to arbitrate and, if so, as to which

parties. Id. Second, the Court determines whether the Limited Warranty contains a valid delegation provision. Id.

Compelled arbitration turns upon the terms of the contract, not upon an occurrence or a transaction. See Janvey v. Alguire, 847 F.3d 231, 240 (5th Cir. 2017). Consistent with arbitration's contractual roots, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 240. Thus, the Court first turns to the threshold issue of which, if any, parties have agreed to arbitrate this dispute. Reyna v. Int'l Bank of Commerce, 839 F.3d 373, 377 (5th Cir. 2016). In so doing, the Court does not consider the merits of the Rosses underlying claims. Tittle v. Enron Corp., 463 F.3d 410, 425n. 12 (5th Cir. 2006) (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). The Court applies Mississippi contract law to determine whether the parties entered into a valid agreement to arbitrate the dispute. See Kubala, 830 F.3d at 203.

**A.  Existence of a Valid Agreement to Arbitrate**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

Under the FAA, an arbitration clause in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A contract "involves" commerce if it affects interstate commerce. Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 274 (1995). Contracts between citizens of different states "involve" commerce under the FAA. See, e.g., Pedcor Mgmt. Co. Welfare Ben. Plan v. Nationals Personnel of Texas, Inc., 343 F.3d 355, 361 n. 29 (5th Cir. 2003); Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp., 797 F.2d 238, 243 (5th Cir. 1986).

Here, the Limited Warranty "involves" commerce under the FAA because it was entered into by Platinum (an Alabama corporation), Quality (a Mississippi citizen), and the Rosses (Mississippi citizens) [Doc. No. 14-1, pp. 1-2]. Therefore, the FAA applies and the arbitration provision in the Limited Warranty is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Court will analyze contract-formation as to each party, determining which, if any, have agreed to arbitrate, before addressing the delegation issue. Reyna, 839 F.3d at 377; Kubala, 830 F.3d at 202.

6

### a). The Signatory Plaintiffs

The Rosses argue that no agreement to arbitrate exists because the arbitration provision is unconscionable and violates federal law [Doc. No. 22, pp. 3-4]. The Court addresses each contention in turn.

#### i). Unconscionability

It is unclear whether the Rosses challenge the validity of the Limited Warranty, the arbitration provision, or both. The distinction is important in the context of a delegation provision because, if valid, it empowers the arbitrator to adjudicate challenges to the Limited Warranty itself. See Allen v. Regions Bank, 389 Fed. App'x 441, 445 (5th Cir. 2010). Because the Rosses fail to specify the object of their challenge – the Limited Warranty versus the arbitration provision – the Court considers all of the arguments which could conceivably relate to the validity of the arbitration provision.

The Rosses admit signing the Limited Warranty containing the arbitration provision but contest the latter's validity on the ground of unconscionability [Doc. No. 22, pp. 5-6]. Although they do not so specify, it appears that the Rosses intend to argue that the arbitration provision is procedurally unconscionable. See Caplin Enter., Inc. v. Arrington, 145 So. 3d 608, 614 (Miss. 2014) (distinguishing procedural unconscionability from substantive

7

unconscionability). Specifically, they contend the Limited Warranty "consisted of two pages of very small print" [Doc. No. 22, p. 3]. They complain that they "made no 'decision' to sign" and the "alleged 'agreements' were not negotiated nor [*sic*] bargained for" [Doc. No. 22, p. 3].

Procedural unconscionability connotes "a lack of knowledge, lack of voluntariness, inconspicuous print, [or] the use of complex legalistic language." Smith v. Express Check Advance of Miss., LLC, 153 So. 3d 601, 609 (Miss. 2014).

Here, the Limited Warranty is a pre-printed form likely offered to the Rosses on a take-it-or-leave-it basis [Doc. No. 14-1, pp. 1-2]. A disparity in bargaining power exists between consumers like the Rosses and major manufactured home companies like Platinum and, to a lesser extent, retailers like Quality. But "an arbitration agreement may not be labelled unconscionable simply because it carries with it aspects of adhesion." Norwest Fin. Miss. v. McDonald, 905 So. 2d 1187, 1194 (Miss. 2005). Indeed, procedural unconscionability requires more. See Smith, 153 So. 3d at 609-10.

For one, the Rosses do not contend that they did not know what they were signing or that they signed the Limited Warranty involuntarily. See Entergy Miss., Inc. v. Burdette Gin. Co., 726 So. 2d 1202, 1207-08 (Miss. 1998) (involuntariness a dispositive factor in unconscionability analysis). The Rosses do not contend

8

that they lacked an opportunity to read the Limited Warranty. And contrary to their assertions, the terms of the arbitration provision in the Limited Warranty are neither set forth in "very small print" nor in "exhaustive detail" [Doc. No. 22, p. 3]. This is a two-page document with text set in an ordinary-sized font and unsophisticated syntax susceptible to common understanding and emphasized with boldface where relevant [Doc. No. 14-1, pp. 1-2]. The Rosses had a duty to read it before signing, Bailey v. Estate of Kemp, 955 So. 2d 777, 783 (Miss. 2007), and their failure to do so does not make the arbitration provision procedurally unconscionable. Thus, the Rosses have not met their burden of showing unconscionability, and the Court proceeds to analyze the Rosses' statutory challenges.

### ii). Federal Statutes

The Rosses next contend the arbitration provision runs counter to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., and the National Manufactured Housing and Construction and Safety Standards Act ("NMHCSA"), 42 U.S.C. § 5401 et seq., but fail to explain why either statute invalidates the Limited Warranty's arbitration provision.

The Rosses' position is unsupported by either statute. The MMWA does not prohibit the arbitration of MMWA written warranty claims. Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 479 (5th

Cir. 2002) ("We hold that the MMWA does not preclude binding arbitration of claims pursuant to a valid binding arbitration agreement.").

As to the NMHCSA, the Rosses point to Section 5421 as "supersed[ing] the Federal Arbitration Act" [Doc. No. 22, p. 5]. But Section 5421 does no such thing. Section 5421 merely prohibits manufactured home purchasers from waiving the rights afforded them "under this chapter." 42 U.S.C. § 5421. Those rights include receipt of a notification of any defect in a manufactured home, 42 U.S.C. § 5414(a), and replacement of a manufactured home that "cannot be repaired within sixty days from the date on which a defect is discovered," 42 U.S.C. § 5414(i). Nothing in the relevant chapter grants manufactured home purchasers a statutory right to a jury trial to which Section 5421's non-waiver provision would attach. Therefore, nothing in the Limited Warranty's arbitration provision impermissibly "waives" any of the rights afforded manufactured home purchasers under the NMHCSA, and the Rosses' NMHCSA-based challenge to the arbitration provision lacks merit.

### b). **The Signatory Defendants**

Platinum and Quality are parties to the Limited Warranty [Doc. No. 14-1, pp. 1-2]. The Rosses do not dispute that Quality is a party to the Limited Warranty; instead, they contend that Platinum cannot avail itself of the terms of the Limited Warranty, including

10

the arbitration clause, because it did not sign the agreement [Doc. No. 22, pp. 3-4].

Under Mississippi law, a signature is not always required to create a contract. Indeed, "[t]he object of a signature is to show mutuality or assent, but these facts may be shown in other ways." Carpenter Props., Inc. v. JP Morgan Chase Bank Nat'l Ass'n, 647 Fed. App'x 444, 450 (5th Cir. 2016) (quoting Turney v. Marion Cty. Bd. of Educ., 481 So. 2d 770, 774 (Miss. 1985)).

Several facts suggest that Platinum assented to the Limited Warranty. First, the Limited Warranty was prepared by Platinum and Platinum's company logo is prominently displayed on its first page [Doc. No. 14-1, p. 1]. Second, the very nature of the Limited Warranty — a contract under which Platinum warrants the integrity of its product — confirms that Platinum intended to be bound by it.[1] Finally, the Rosses would not have sued Platinum for breaching the Limited Warranty if they thought Platinum was not bound by it [Doc. No. 14-1, Count II]. Thus, the Limited Warranty contains a valid agreement to arbitrate as to Platinum and Quality, Reyna, 839 F.3d at 378, and the Rosses' rejoinder that lack of a signature precludes enforcement of the arbitration clause as to Platinum is unavailing.

---

[1] The Court also recognizes that it would be inequitable to allow the Rosses to "have it both ways" — suing Platinum for breaching the Limited Warranty on the one hand and, on the other, avoiding arbitration by contending Platinum is not bound by the Limited Warranty for lack of a signature. See Washington Mut. Fin. Grp., LLC v. Bailey, 364 F.3d 260, 268 (5th Cir. 2004).

11

Having determined that the Limited Warranty is a valid agreement between Platinum, the Rosses, and Quality, the Court turns to the non-signatory defendants ⸺ Harbin, Miss-Lou, and U.S. Bank.

**c). <u>The Non-Signatory-Defendants</u>**

Neither Harbin, Miss-Lou, nor U.S. Bank is a party to the Limited Warranty containing the arbitration provision [Doc. No. 14-1, pp. 1-2]. Although the parties have not briefed the issue, the Court considers whether these non-signatory-defendants can compel the signatory-plaintiffs to arbitrate the claims against them. <u>See</u>, <u>e.g.</u>, <u>Grigson v. Creative Artists Agency, LLC</u>, 210 F.3d 524, 528-29 (5th Cir. 2000).

As non-signatory-defendants, Harbin, Miss-Lou, and U.S. Bank can compel the Rosses, as signatory plaintiffs, to arbitrate their claims under the doctrine of equitable estoppel if (1) the Rosses must rely on the terms of the Limited Warranty containing the arbitration provision in their suit against the non-signatory-defendants; or (2) the Rosses allege that the non-signatory and signatory-defendants have committed "substantially interdependent and concerted misconduct." <u>Grigson</u>, 210 F.3d at 527 (internal citations omitted).

The first factor cuts against compelling the Rosses to arbitrate their claims against the non-signatory-defendants. The

12

Rosses cannot rely on the terms of the Limited Warranty to assert claims against Harbin, Miss-Lou, and U.S. Bank – none of whom warranted anything to the Rosses under the Limited Warranty containing the arbitration provision.

Declining to apply equitable estoppel under the first factor coheres with the policy underlying the doctrine. In this context, equitable estoppel exists to prevent a plaintiff-signatory from suing under a contract and then disclaiming the portions of it that he dislikes. See Washington Mut. Fin. Grp., LLC, 364 F.3d at 268. No such danger exists here as to the non-signatory-defendants because the Rosses cannot sue them under a warranty to which they are non-parties.

The second factor also weighs against compelling the Rosses to arbitrate their claims against the non-signatory-defendants. Although the Complaint fails to state which claims the Rosses purport to assert against which defendants, certain claims cannot logically be linked to more than one or two defendants.

In fact, the claims which must apply only to the signatory defendants — breach of warranty, violations of the NMHCA, and misrepresentation — are unrelated to the claims which cannot possibly be directed at any defendants other than the non-signatories – claims such as slander and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Looking beyond the Complaint's indiscriminate assertion of all claims against all

defendants, the Court finds no "substantially interdependent and concerted misconduct." Grigson, 210 F.3d at 527 (internal citations omitted). A party cannot be sued for breaching a warranty he did not make (the non-signatories made no warranties), a natural person or business that does not sell or manufacture homes cannot be sued under the NMHCA (no non-signatory is a seller or manufacturer of manufactured homes), and an entity not involved in consumer credit transactions cannot be sued under TILA (no signatory is a financial institution). Although jumbled stylistically, the claims asserted against the signatory and non-signatory defendants are distinct practically and analytically.

Because the Rosses' claims against the non-signatory-defendants are not based upon the Limited Warranty containing the arbitration provision, and the Rosses have not alleged that the non-signatory-defendants and signatory-defendants engaged in "substantially interdependent and concerted misconduct," the Court declines to permit the non-signatory-defendants to compel arbitration under Grigson.

Having concluded that (1) a valid agreement to arbitrate exists between Quality, Platinum, and the Rosses; and (2) the non-signatory-defendants are not entitled to equitably estop the Rosses from litigating, rather than arbitrating or mediating, the claims asserted against them, the Court proceeds to the second step of the Reyna inquiry, determining whether the Limited Warranty

14

contains a valid delegation provision empowering the arbitrator to determine arbitrability. See Reyna, 839 F.3d at 378.

**B.    Validity of Delegation Provision**

A delegation provision in an arbitration contract transfers the power to decide questions of arbitrability from a court to the arbitrator. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). The parties' agreement must "clearly and unmistakably" indicate an intent to arbitrate the issue of arbitrability. AT & T Techs., 475 U.S. at 649.

An agreement that incorporates a body of rules under which an arbitrator determines a dispute's arbitrability is a "clear and unmistakabl[e]" indication that the parties intended to delegate adjudication of arbitrability to an arbitrator. Petrofac, Inc. v. DynMcDermott Petro. Operations Co., 687 F.3d 671, 675 (5th Cir. 2012).

Here, the arbitration provision in the Limited Warranty expressly incorporates the AAA's rules on arbitration [Doc. No. 14-1, p. 2]. The AAA Consumer Arbitration Rules empower the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." See American Arbitration Association, Consumer Arbitration Rules, Rule 14 – Jurisdiction, p. 17 (2014). Because

15

the Limited Warranty incorporates AAA Rules, which permit the arbitrator to determine arbitrability, the Limited Warranty reflects a "clear and unmistakable" intention to arbitrate the issue of arbitrability. Petrofac, Inc., 687 F.3d at 675. Therefore, the Limited Warranty contains a valid delegation provision, Reyna, 839 F.3d at 378, and Quality, the Rosses, and Platinum are compelled to submit the dispute to arbitration or mediation, as required by the Limited Warranty.

To be clear, the Court ventures no opinion as to whether the Rosses purported claims against Quality and Platinum are within the scope of the Limited Warranty's arbitration provision. The Court rules only that the Rosses, Quality, and Platinum are parties to a contract —— the Limited Warranty —— containing a valid delegation provision. The next step in the arbitrability analysis, "decid[ing] in the first instance whether [the] dispute falls within the scope of the arbitration provision," Douglas, 757 F.3d at 462, is for the arbitrator, not this Court. See Reyna, 839 F.3d at 378-79.

## C. Stay of Litigation Pending Arbitration

Having found that Platinum, the Rosses, and Quality have agreed to arbitrate under a Limited Warranty containing a "delegation" provision, the Court now considers whether this

16

litigation should proceed as to non-signatories Miss-Lou, Harbin, and U.S. Bank.

If a court determines that an issue is "referable to arbitration" under § 2 of the FAA, then § 3 of the FAA directs the court to stay the action pending arbitration. See 9 U.S.C. § 3. Section 3, however, generally "only applies to parties to an agreement containing an arbitration clause." Hill v. GE Power Sys., Inc., 282 F.3d 343, 346 (5th Cir. 2002). Under the general rule then, this suit should be stayed only as to the Rosses' claims against Platinum and Quality.

A Section 3 stay extends to a non-signatory only if three conditions are met: "(1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P., 828 F.3d 356, 360 (5th Cir. 2016).

The first factor weighs against staying the litigation as to non-signatories Miss-Lou, Harbin, and U.S. Bank. Although the Rosses' Complaint fails to specify which claims they purport to assert against which Defendants, common sense dictates that certain factual allegations and legal conclusions can apply only to specific defendants. For example, the operative facts with regard to the Rosses' slander claim against Harbin are limited to

17

the comments he is alleged to have made on the telephone on November 15, 2014 [Doc. No. 1, ¶XII]. And as to U.S. Bank, the only operative facts are those concerning the Rosses' communications with U.S. Bank regarding rescission of the contract [Doc. No. 1, ¶XV]. Thus, the facts central to the litigation against non-signatory-defendants Harbin, U.S. Bank, and Miss-Lou differ markedly from the operative facts in the arbitration or mediation proceedings against signatory-defendants Platinum and Quality: the quality of the manufactured home, Quality's related representations to the Rosses, and Quality and Platinum's compliance with applicable warranties.

The second factor also counsels against staying this litigation as to the non-signatories. Although the Rosses have pleaded each purported claim against each defendant, and there is some potential overlap, certain claims are inapplicable to certain defendants. For example, the Rosses' breach of warranty claim cannot apply to non-signatory-defendants Harbin, Miss-Lou, and U.S. Bank because they never warranted anything to the Rosses on the condition or quality of the manufactured home. Similarly, the Rosses' TILA claim cannot apply to any signatory-defendant because only U.S. Bank is a "creditor" with whom the Rosses consummated a "consumer credit transaction." See 15 U.S.C. § 1638.

The third factor also supports proceeding without the signatory-defendants, Platinum and Quality. This litigation

between Miss-Lou, Harbin, U.S. Bank and the Rosses will not "critically impact" the arbitration proceedings between the Rosses, Platinum, and Quality because the "operative facts" linked to the plaintiffs' dispute with the arbitration defendants — the quality of the manufactured home and related representations — differ from the facts relevant to the Rosses' dispute with the litigation defendants, i.e., the content of Harbin's allegedly slanderous statement and the nature of U.S. Bank's representations to the Rosses.

In sum, this Court's adjudication of the merits of the Rosses' claims against signatory-defendants Platinum and Quality should not influence the arbitrator's adjudication of the Rosses' claims against non-signatory-defendants Miss-Lou, Harbin, and U.S. Bank because the arbitrator will confront different issues than this Court. Therefore, the Court concludes that a Section 3 stay should not extend to non-signatories Miss-Lou, Harbin, and U.S. Bank, and proceeding with this litigation as to those defendants would not "destroy the signatories' right to a meaningful arbitration." Waste Mgmt. Inc. v. Residuous Industriales Multiquim, 372 F.3d 339, 343 (5th Cir. 2004).

### III. CONCLUSION

The Rosses, Platinum, and Quality are parties to an agreement containing a valid delegation provision transferring the power to

19

determine arbitrability from this Court to the arbitrator. The Rosses, Platinum, and Quality, as signatories to the Limited Warranty, shall proceed to mediation or arbitration, as required by the Limited Warranty's arbitration provision. A stay is unwarranted, and the litigation will proceed in this Court as to non-signatory-defendants Harbin, Miss-Lou, and U.S. Bank.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED AND ADJUDGED** that the Motion to Dismiss or, Alternatively, Compel Arbitration **[Doc. No. 14]** filed by Defendant Quality Homes of McComb, Inc. is **GRANTED IN PART** as to compelled arbitration, and Plaintiffs Earl and Maxcine Ross and Defendants Quality Homes of McComb, Inc. and Platinum Homes, LLC are ordered to submit the dispute to mediation and, if necessary, binding arbitration, as required by the agreement between them;

**IT IS FURTHER ORDERED AND ADJUDGED** that all claims asserted by Plaintiffs Earl and Maxcine Ross against Defendants Quality Homes of McComb, Inc. and Platinum Homes, LLC are **DISMISSED WITHOUT PREJUDICE** subject to a refiling of a future action to enforce any arbitration award, and that any pending motions filed by Quality Homes of McComb, Inc. or Platinum Homes, LLC are **DENIED AS MOOT**.

SO ORDERED this the 16th day of November, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE