**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**EARL ROSS, et al.**                                                    **PLAINTIFFS**

**V.**                                              **CAUSE NO. 5:17-cv-46-DCB-MTP**

**QUALITY HOMES OF MCCOMB, INC., et al.**                **DEFENDANTS**

### OPINION AND SHOW CAUSE ORDER

This cause is before the Court on Motions to Dismiss **[Doc. Nos. 9, 27]** filed by Joey Harbin, an employee of the manufacturer of the Plaintiffs' mobile home, and U.S. Bank, N.A., the bank that financed the Plaintiffs' mobile home purchase. Having considered the motions, the Plaintiffs' responses, and applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

### I. BACKGROUND

Buyers of a mobile home sued the home's manufacturer, transporter, financier, retail-seller, and an employee of the manufacturer after inspecting the home and declaring it "uninhabitable." The Court compelled the buyers to arbitrate their claims against the manufacturer and retail-seller. The manufacturer's employee and the financier now move to dismiss the buyers' claims.

The buyers allege the Defendants slandered them, misrepresented the home's condition, breached fiduciary duties, and violated consumer protection and unfair trade practices laws.

On October 17, 2014, Plaintiffs Earl and Maxcine Ross (the "Rosses") bought a manufactured home made by Defendant Platinum Homes, LLC ("Platinum") from Quality Homes of McComb, Inc. ("Quality"), a McComb-based retail-seller [Doc. No. 1, ¶VI].[1] U.S. Bank, N.A. ("U.S. Bank") financed the purchase [Doc. No. 1, ¶VI].

On October 30, 2014, the mobile home was delivered to Quality's lot in McComb [Doc. No. 1, ¶VIII]. That same day, the Rosses inspected the home and found it deficient: it contained "a gap in the celling where the roof did not come together," and "sheetrock [that] had fallen from the wall in the living room" [Doc. No. 1, ¶IX]. The inspection also revealed an unpleasant chemical odor [Doc. No. 1, ¶VIII].

Hoping to swap the home for another, the Rosses visited Quality on November 15, 2014 [Doc. No. 1, ¶ XII]. On the visit, the Rosses overheard a phone conversation during which Defendant Harbin, a Platinum manager, said "I am not coming down there to

---

[1] As a part of the purchase, the Rosses signed a "Platinum Homes, LLC. Limited Warranty" containing a provision requiring the parties to mediate or arbitrate. The Court found that the Rosses, Platinum, and Quality were contractually obligated to resolve their dispute by arbitration [Doc. No. 40]. The Court further found it unnecessary to stay the remainder of this suit pending arbitration [Doc. No. 40].

2

change out nothing for those niggers" [Doc. No. 1, ¶XII]. Ultimately, Quality refused to exchange the home for another [Doc. No. 1, ¶XIII].

Next, the Rosses called U.S. Bank hoping to rescind their loan contract with U.S. Bank [Doc. No. 1, ¶XV]. In late December 2014, the Rosses spoke with a U.S. Bank employee, explained the problems with the home, and asked to rescind the contract [Doc. No. 1, ¶XV]. U.S. Bank declined [Doc. No. 1, ¶XV].

On April 20, 2017, the Rosses sued Harbin and U.S. Bank for (1) breach of fiduciary duties; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) fraudulent misrepresentation; (5) "unconscionability"; (6) negligent misrepresentation; (7) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Mississippi Consumer Protection Act ("MCPA"), MISS. CODE ANN. § 75-24-5; (8) slander; and (9) civil rights violations under 42 U.S.C. § 1983.

In response, Harbin and U.S. Bank moved to dismiss for failure to state any claims upon which relief can be granted. See FED. R. CIV. P. 12(b)(6).

## II. DISCUSSION

To overcome Defendants' motions, the Rosses must plead a "plausible" claim for relief. Body by Cook, Inc. v. State Farm

3

Mut. Auto. Ins., 869 F.3d 381, 385 (5th Cir. 2017) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is "plausible" if it contains factual content that allows the Court to reasonably infer that Defendants Harbin and U.S. Bank are liable for the misconduct alleged. Edionwe v. Bailey, 860 F.3d 287, 291 (5th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Accepting all well-pleaded allegations as true, and viewing them in the light most favorable to the Rosses, Gines v. D.R. Horton, Inc., 699 F.3d 812, 816 (5th Cir. 2012), the Court analyzes the Complaint count-by-count to determine whether it states any plausible claims against Harbin and U.S. Bank.

**Count I – Breach of Fiduciary Duty**

The Complaint alleges Defendants "had a duty to act in the best interest of Plaintiffs," and breached that duty by "providing misleading information or concealing information" [Doc. No. 1, p. 11]. The source of the putative duty is "the business relationship . . . for the purchase of a manufactured home" [Doc. No. 1, p. 11].

To plead a claim for breach of fiduciary duty, the Rosses must allege that Defendants (1) owed them a fiduciary duty; and (2) breached that duty. Merchants & Planters Bank of Raymond v. Williamson, 691 So. 2d 398, 403 (Miss. 1997).

4

A contractual relationship, standing alone, does not create a fiduciary duty. Allstate Life Ins. Co. v. Parnell, 292 Fed. App'x 264, 270 (5th Cir. 2008) (per curiam). But a fiduciary duty arises if (1) the activities of the parties go beyond their operating on their own behalf; (2) the parties have a common interest and profit from the activities of each other; (3) the parties place trust in one another; and (4) one party has control over the other. Univ. Nursing Assocs., PLLC v. Phillips, 842 So. 2d 1270, 1275 (Miss. 2003) (en banc) (internal citations omitted).

Count I fails to state a plausible breach of fiduciary duty claim. Besides failing to allege that either Defendant owes the Rosses a fiduciary duty, the Complaint alleges no facts which, viewed in the Rosses' favor, could impose a fiduciary duty upon Harbin or U.S. Bank. See Strickland v. Broome, 2017 WL 4707032, *2 (S.D. Miss. Oct. 19, 2017) (plaintiff failed to plead facts sufficient to create a fiduciary duty). Indeed, the only relationship that could supply a fiduciary duty is the "business relationship . . . for the purchase of a manufactured mobile home" [Doc. No. 1, p. 11]. That "business relationship" was with Platinum and Quality – not with Harbin and U.S. Bank.

**Count II – Breach of Contract**

Although styled "breach of contract," Count II merely re-hashes Count I's allegations. The Rosses do not allege they

5

contracted with Harbin or U.S. Bank; instead, they reference "enter[ing] into a business relationship with Defendant" [Doc. No. 1, p. 11].

To state a claim for breach of contract, the Rosses must allege the existence of a contract and a breach. Business Commc'n, Inc. v. Banks, 90 So. 3d 1221, 1225 (Miss. 2012); see also Hammonds v. Lennep, No. 1:09-CV-642-LG-RHW, 2009 WL 3418546, at *2 (S.D. Miss. Oct. 20, 2009) (breach of contract claim dismissed for lack of a contract between plaintiff and defendant).

Count II fails to state a plausible breach of contract claim because the Rosses fail to allege that either U.S. Bank or Harbin breached any contract.

**Count III – Breach of the Implied Covenant of Good Faith**

The Rosses allege Defendants breached the duty of good faith and fair dealing by "evading the spirit of the [mobile home purchase] contract by sending a home not agreed upon" [Doc. No. 1, p. 12].

Under Mississippi law, "all contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Gen. Motors Acceptance Corp. v. Baymon, 732 So. 2d 262, 269 (5th Cir. 1999) (internal citations and quotation marks omitted); see also Ware v. U.S. Bank Nat'l Assoc., No. 3:13CV387-DPJ-FKB, 2014 WL 12642116, at *2 (S.D. Miss. Apr. 15, 2014)

6

(plaintiff cannot plead a claim for breach of the implied covenant of good faith and fair dealing against a party with whom it has no contract).

Count III fails to state a plausible claim for breach of the implied covenant of good faith. The Rosses have not identified a contract breached by either Harbin or U.S. Bank and, therefore, cannot plead a breach of implied covenant of good faith claim against either Defendant. See Ware, 2014 WL 12642116, at *2. Further, the factual allegations said to amount to a breach – "sending a home not agreed upon" – do not apply to Harbin, a manager of the home's manufacturer, and U.S. Bank, the Rosses' lender.

**Count IV – Fraudulent Misrepresentation**

The Rosses' misrepresentation allegations are conclusory. Without identifying a misrepresentation, the Rosses allege that "Defendants failed to complete his [*sic*] contractual agreement" [Doc. No. 1, p. 13]. The Rosses further allege that the unspecified misrepresentation "was purposely designed to deceive Plaintiffs into believing that Defendant was furnishing the agreed upon home at a fair price" [Doc. No. 1, p. 13].

To plead a claim for fraudulent misrepresentation, the Rosses must allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or

ignorance of the truth; (5) the speaker's intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. Holland v. Peoples Bank & Trust Co., 3 So. 3d 94, 100 (Miss. 2008).

Because fraudulent misrepresentation is a form of fraud, the Rosses must state with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b). Indeed, Federal Rule of Civil Procedure 9(b) applies to "all averments of fraud, whether they are part of a fraud claim or not." Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir. 2001). Compliance with Rule 9(b) requires a plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Flaherty & Crumrine Preferred Income Fund v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (quoting Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997)).

Count IV fails to state a plausible fraudulent misrepresentation claim. First, the Complaint does not allege a specific misrepresentation. Second, it does not "identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Flaherty, 565 F.3d at 207.

8

Third, it lacks an allegation that the Rosses justifiably relied on a misrepresentation. See Holland, 3 So. 3d at 100.

**Count V – Unconscionability**

The Rosses allege that Defendants' conduct, as described in paragraphs I - XVI of the Complaint, amounts to "unconscionable practices . . . under the Uniform Commercial Code and related statutes" [Doc. No. 1, p. 14].

Unconscionability is a defense to enforcement of a contract, not a cause of action. See, e.g., Caplin Enters., Inc. v. Arrington, 145 So. 3d 608, 614 (Miss. 2014). Because a claim for damages on the basis of "unconscionability" is not a cognizable theory, Count V fails to state a plausible claim for relief. See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (theory must be cognizable for complaint to present "plausible" right to relief); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (same).

Count V's "unconscionability" claim is not a "claim" at all. Amendment would be futile; therefore, the Court dismisses Count V with prejudice.

**Count VI – Negligent Misrepresentation**

The substance of Count VI is difficult to discern because the Rosses do not say which Defendant allegedly misrepresented what [Doc. No. 1, pp. 14-15]. For example, the Rosses allege that

9

"Defendants" falsely represented that the Rosses would receive "a 2015 Platinum mobile home similar to the model home displayed" on the lot [Doc. No. 1, p. 14]. With equal opacity, the Rosses allege that "Defendants did not rescind the contract after the Plaintiffs requested [*sic*] to do so" [Doc. No. 1, p. 14].[2]

To plead a claim of negligent misrepresentation, the Rosses must allege: (1) a misrepresentation or omission of a fact; (2) materiality; (3) the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of such a person; (4) the Rosses reasonably relied on the misrepresentation or omission; and (5) the misrepresentation caused the Rosses damages. Horace Mann Life Ins. Co. v. Nunaley, 960 So. 2d 455, 461 (Miss. 2007).

Count VI fails to state a plausible negligent misrepresentation claim. Most of Count VI's allegations are directed towards Quality and Platinum, the retail-seller and manufacturer of the mobile home. None of the allegations contained in Count VI could conceivably be directed to Harbin. And the only allegations that could relate to U.S. Bank are conclusory statements: "Defendants misrepresented the financial arrangements" and "Defendants did not rescind the contract" [Doc. No. 1, p. 14].

---

[2] The Rosses also allege that "Defendants" misrepresented the "financial arrangements" and the "cost of the requested upgrades and transportation fees" [Doc. No. 1, p. 14].

The latter is not a misrepresentation and, with regard to the former, the Rosses have not pleaded <u>how</u> the "financial arrangements" were misrepresented, <u>who</u> misrepresented them, whether the misrepresentation was <u>material</u>, and how any misrepresentation was <u>negligent</u>.

**Count VII - Consumer Protection Laws**

The Rosses allege that "Defendants" engaged in unfair or deceptive trade practices, including "fail[ing] to inform the plaintiffs of the condition of the manufactured home," "fail[ing] to rescind the contract" and "participa[ting] in bad faith negotiations" [Doc. No. 1, p. 15]. Again, the Rosses do not specify which conduct applies to which Defendant. The Rosses cite TILA, the MMWA, and the MCPA, but fail to link any factual allegation to any requirement of any statute.

*Truth in Lending Act (TILA)*

TILA requires a "creditor" to disclose information to the person obligated on a "consumer credit transaction." 15 U.S.C. § 1631(a).[3] The creditor must make the TILA-required disclosures before "consummating" the transaction 12 C.F.R. § 226.17(b). A transaction is "consummated" when "a consumer becomes

---

[3] A "creditor" is "[a] person who regularly extends consumer credit." 12 C.F.R. § 226.2(17)(i). A "consumer" is "a cardholder or natural person to whom consumer credit is offered or extended." 12 C.F.R. § 226.2(11).

contractually obligated on a credit transaction." 12 CFR § 226.2(a)(13); see also Lea v. Buy Direct, L.L.C., 755 F.3d 250, 253 (5th Cir. 2014).

Two types of TILA claims are relevant here: rescission claims and disclosure claims. Rescission claims must be brought within three years after the date of consummation of the transaction. 15 U.S.C. § 1635(f). Disclosure claims, on the other hand, must be brought within one year of the "violation." 15 U.S.C. § 1640(e); McCrimmon v. Wells Fargo Bank, N.A., 516 Fed. App'x 372, 375 (5th Cir. 2013) (per curiam). A "violation" occurs when the transaction is consummated. Moor v. Travelers Ins. Co., 784 F.2d 632, 633 (5th Cir. 1986) (citing In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984) (Wisdom, J.)).

Count VII fails to state a plausible TILA claim. The Complaint omits the factual allegations necessary to show that TILA applies. For example, the Rosses do not allege that any defendant is a "creditor" to which TILA's requirements apply. In fact, Defendant Harbin, as a manager of Platinum, is assuredly not a "creditor" under TILA. Further still, the Rosses do not clarify which contract they fault "Defendants" for declining to rescind.

But the deficiencies extend beyond the Complaint's sparse factual allegations. Even if properly pleaded, the Rosses could not rescind the purchase money mortgage contract with U.S. Bank

12

under TILA because that contract is a "residential mortgage transaction" to which no right to rescind attaches. See 15 U.S.C. § 1635(e)(1). And any non-disclosure claim, even if properly pleaded, would be time-barred because the purchase money mortgage that is presumably the subject of the TILA-related allegations was consummated in 2014, more than one-year from the date the Rosses sued. See 15 U.S.C. § 1640(e).

Amendment of Count VII's TILA allegations would be futile. Any TILA disclosure claim is time-barred; any rescission claim is precluded by the "residential mortgage transaction" exemption. Therefore, the Court dismisses the Rosses' TILA claim with prejudice.

*Magnuson–Moss Warranty Act (MMWA)*

The MMWA standardizes consumer product warranties and imposes liability upon warrantors who fail to comply with a warranty. Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 472 n. 3 (5th Cir. 2002). MMWA liability is limited to warrantors of "consumer products." A "consumer product" includes "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1).

Count VII fails to state a plausible MMWA claim. The Complaint does not allege that the mobile home the Rosses purchased is a

13

"consumer product," nor that any Defendant is a "warrantor." See 15 U.S.C. §§ 2301(3) (defining "consumer"), 2301(1) (defining "consumer product"), and 2301(5) (defining "warrantor"). In fact, the allegations of the Complaint belie any contention that either Harbin or U.S. Bank could be construed a "warrantor" in context. Although the Rosses do not specify the "consumer product" of which they complain, the only candidate is the mobile home itself. Neither U.S. Bank nor Harbin is in a position to warrant anything relative to the quality or condition of the mobile home. Like many of the counts in the Complaint, the MMWA allegations appear to be directed towards Platinum and Quality – not Harbin and U.S. Bank.

To the extent Count VII attempts to allege an MMWA claim, the Court dismisses the claim with prejudice. Amendment would be futile because the Rosses cannot allege facts showing that U.S. Bank or Harbin was a "warrantor" with regard to the manufactured home. See 15 U.S.C. § 2301(5).

*Mississippi Consumer Protection Act (MCPA)*

The MCPA creates liability for "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5(1); In re Miss. Medicaid Pharm. Average Wholesale Price Litig., 190 So. 3d 829, 841 (Miss. 2015).

MCPA liability is limited to "seller[s], lessor[s], manufacturer[s], or producer[s], of a method, act or practice

prohibited by" the MCPA. MISS. CODE ANN. § 75-24-15(1); see also Humphrey v. Citibank NA, No. 2:12-CV-148M-V, 2013 WL 5407195, at *7 (N.D. Miss. Sept. 25, 2013) (dismissing complaint which failed to allege that any defendant was a "seller," "lessor," "manufacturer," or "producer" under the Act). Before suing under the MCPA, plaintiffs must "first ma[ke] a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." MISS. CODE. ANN. § 75-24-15(2).

Count VII fails to state a plausible MCPA claim. First, it is unclear which Defendant's conduct the Rosses contend is "unfair" or "deceptive." Indeed, the Rosses simply allege "Defendants failed to inform the plaintiffs of the condition of the manufactured home[,] . . . failed to rescind the contract[,] . . . and participated in bad faith negotiations" [Doc. No. 1, p. 15]. The Rosses fail to tie any of these allegations to the MCPA's thirteen examples of "unfair" and "deceptive" practices. See MISS. CODE ANN. § 75-24-5(2). Second, the Rosses fail to allege that they attempted to resolve their claims through an informal dispute resolution program, as the MCPA requires. See MISS. CODE. ANN. § 75-24-15(2); see also Cole v. Chevron USA, Inc., 554 F. Supp. 2d 655, 668 (S.D. Miss. 2007) (dismissing MCPA claim for failure to attempt to resolve claim by informal dispute resolution program).

15

**Counts VIII and IX – Slander and Civil Rights Violations**[4]

The Rosses allege Harbin slandered them, violated their civil rights, and caused them emotional distress when Harbin called them "niggers" during a phone conversation with a Quality employee [Doc. No. 1, pp. 8, 15-16].

*Slander*

To plead a slander claim, a plaintiff must allege "(1) a false and defamatory statement concerning the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Brothers v. Winstead, 129 So. 3d 906, 928 (Miss. 2014).

Slander is an intentional tort with a one-year statute of limitations. See MISS. CODE ANN. § 15-1-35; Nygaard v. Getty Oil Co., 918 So. 2d 1237, 1240 (Miss. 2005).

Any slander claim is time-barred. The cause of action accrued on November 15, 2014, when Harbin is alleged to have called the Rosses "niggers" [Doc. No. 1, p. 8]. The Rosses sued on April 20,

---

[4] Count IX is styled "emotional distress" but modified with a parenthetical indicating that the Rosses perceive the source of liability to be § 1983. Because "emotional distress" is not a cause of action, and the Rosses have not pleaded facts from which the Court can discern whether they intend to sue for anything other than civil rights violations – i.e., negligent infliction of emotional distress or intentional infliction of emotional distress - the Court considers only the Rosses' civil rights claims under § 1983.

16

2017 — over one-and-a-half years beyond the expiration of the one-year statute of limitations. See, e.g., E.E.O.C. v. Southern Pub. Co., 732 F. Supp. 682, 683 (S.D. Miss. 1988) (dismissing slander claim as time-barred). The Rosses do not allege that Defendants fraudulently concealed or otherwise prohibited them from pursuing the slander claim. Amendment would be futile; therefore, the Rosses' slander claim is dismissed with prejudice.

*42 U.S.C. § 1983*

To plead a § 1983 claim, the Rosses must allege that a person acting under color of law deprived them of a federal right. Priester v. Lowndes Cty., 354 F.3d 414, 420 (5th Cir. 2004). Where the plaintiffs seek to hold a private citizen liable under § 1983, as the Rosses aim to do here, the plaintiff must allege that the citizen conspired with state actors. Id. at 420.

The Rosses fail to state a § 1983 claim against Harbin and U.S. Bank. First, no state action is apparent from the Rosses' complaint. See Ford v. Harris Cty. Med. Soc., 535 F.2d 321, 322-23 (5th Cir. 1976) (per curiam) (affirming dismissal of § 1983 claim for failure to plead state action); Lyons v. Chase Home Lending, 2011 WL 4907084, *7 (N.D. Tex. Sept. 1, 2011) (dismissing § 1983 claim for failure to plead state action). Indeed, the Rosses do not allege that Harbin – a private citizen – conspired with any state actor. Second, use of a racial slur, standing alone, does

17

not violate a federal right. See Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) ("[U]se of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."); Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (verbal abuse alone does not constitute a § 1983 violation).

To the extent Counts VII and IX attempt to allege a § 1983 claim, the Court dismisses the claim with prejudice. Amendment would be futile because the Rosses cannot allege facts showing that U.S. Bank or Harbin was a state actor, or that either Defendant conspired with a state actor, or that U.S. Bank or Harbin violated any federally-protected right.

### III. CONCLUSION

Viewing the facts and drawing the inferences in the non-movant Plaintiffs' favor, the Court finds that the Complaint states no plausible claim against any Defendant.

The Court finds that the Rosses cannot cure by amendment their failure to state claims on Count V, Count VIII, Count IX, and Count VII, to the extent it alleges claims under TILA and the MMWA. Therefore, those Counts are dismissed with prejudice.

The Court further finds that the Rosses' Complaint fails to convey the information the Court needs to determine whether the defects inherent in Count I, Count II, Count III, Count IV, Count

18

VI, and Count VII, to the extent it alleges claims under the MCPA, are curable and, therefore, whether dismissing those Counts with prejudice is warranted.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Plaintiffs have ten days from entry of this Order to show cause to this Court why it should not dismiss Count I, Count II, Count III, Count IV, Count VI, and Count VII, to the extent it alleges claims under the MCPA, with prejudice.

**FURTHER ORDERED** that the Motions to Dismiss filed by Defendants Joey Harbin **[Doc. No. 9]** and U.S. Bank, N.A. **[Doc. No. 27]** are **GRANTED IN PART** as to Count V, Count VIII, Count IX, and Count VII, to the extent it alleges claims under TILA and the MMWA, and those Counts are **DISMISSED WITH PREJUDICE.**

SO ORDERED this the 16th day of November, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE